UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

MOHAMED ABUHAMRA,
AREF AHMED,
RMZY ABDULLAH,
NAGIB AZIZ, and
AZZEAZ SALEH,

                Defendants.

DECISION AND ORDER
99-CR-131A

---

## INTRODUCTION

On March 3, 2004, defendants Mohamed Abuhamra, Aref Ahmed, Rmzy Abdullah, Nagib Aziz and Azzeaz Saleh were found guilty following a jury trial of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and substantive violations of the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2342(a). Currently before the Court are: (1) defendants' objections to the amount of loss determinations in their respective Presentence Investigation Reports ("PSR"); (2) the government's request for a two-level upward adjustment for use of a minor by defendant Mohamed Abuhamra; and (3) the government's motions for upward departures regarding defendants Nagib Aziz and Azzeaz Saleh, based on their alleged participation in a robbery of another cigarette smuggler. A sentencing hearing was held on February 9 and May 4, 2005.

**BACKGROUND**

From February 1995 to January 1997, defendants, along with 27 other co-defendants, participated in a scheme whereby they bought large quantities of untaxed cigarettes from a smokeshop located on the reservation of the Seneca Nation of Indians, and then transported and sold such cigarettes in New York and/or Michigan, without collecting or paying any state excise taxes. At least some of the proceeds from the sale of the cigarettes were used to buy additional cigarettes to perpetuate the scheme.

The defendants would usually order the cigarettes in advance from the smokeshop, which was owned and operated by witness Linda Mohawk ("Mohawk"). Once Mohawk received an order from a defendant, she would, in turn, relay the order to her cigarette wholesaler, defendant A.D. Bedell Company ("A.D. Bedell"). On each such order to A.D. Bedell, Mohawk would indicate a "code name" for the particular defendant making the order. For example, Mohawk testified that the code name for defendant Aref Ahmed was "AT." Once A.D. Bedell received an order from Mohawk, it would prepare an invoice for that order, charging a special account set up by Mohawk for this smuggling activity and indicating the code name of the particular defendant making the order. Thus, an A.D. Bedell invoice for an order by Aref Ahmed would have indicated that the order was for "AT."

According to the PSR, if all the cigarettes for which there are invoices would have been sold in New York, the total amount of tax loss to New York would have been $12,750,645. Likewise, if all the cigarettes had been sold in Michigan, the total tax

2

loss to Michigan would have been $17,760,758. There is no evidence of exactly how many cigarettes were sold in New York as opposed to Michigan.

## DISCUSSION

A.  *Amount of Loss*

Section 1B1.3 of the United States Sentencing Guidelines ("U.S.S.G.") provides that when determining the amount of relevant conduct for which a defendant is to be held accountable, the sentencing court should include:

> in the case of jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]

See U.S.S.G. § 1B1.3(a)(1)(B). Application Note 2(c) of § 1B1.3 provides several examples to assist courts in determining whether a defendant should be held accountable for jointly undertaken criminal activity. Both the government and the defendants agree that the most relevant example with regard to this case is Application Note 2(c)(6), which provides as follows:

> Defendant P is a street-level drug dealer who knows of other street-level drug dealers in the same geographic area who sell the same type of drug as he sells. Defendant P and the other dealers share a common source of supply, but otherwise operate independently. Defendant P is not accountable for the quantities of drugs sold by the other street-level drug dealers because he is not engaged in a jointly undertaken criminal activity with them. In contrast, Defendant Q, another street-level drug dealer, pools his resources and profits with four other street-level drug dealers. Defendant Q is engaged in a jointly undertaken criminal activity and, therefore, he is accountable under subsection (a)(1)(B) for the quantities

3

of drugs sold by the four other dealers during the course of his joint undertaking with them because those sales were in furtherance of the jointly undertaken criminal activity and reasonably foreseeable in connection with that criminal activity.

The government contends that the defendants in this case are "Q's" rather than "P's," and therefore each of them should be held accountable for the entire amount of tax loss resulting from the conspiracy because all such losses were in furtherance of the jointly undertaken criminal activity and reasonably foreseeable in connection with that criminal activity.  The government argues that the defendants should be considered "Q's" because they employed common drivers to transport the cigarettes (in some instances, they even used each other as drivers).  According to the government, such pooling of resources makes defendants "Q's" rather than "P's."  The government's theory results in a New York tax loss of $12,740,645 and a Michigan tax loss of $17,760,758, with a corresponding base offense level of 26 for each defendant.  See U.S.S.G. §§ 2S1.1(a)(1), 2E4.1(a)(2), 2T4.1(K).  As stated above, these tax loss amounts were derived from totaling all the A.D. Bedell invoices for the cigarette orders that were part of the scheme and calculating the tax owing thereon.

In the alternative, the government argues that even if the defendants were considered to be "P's" rather than "Q's," the base offense level for each defendant would still be 26.  The government arrives at this conclusion based on evidence regarding how frequently each defendant picked up cigarettes at the smoke shop and how large their loads usually were, along with evidence regarding the invoices from A.D. Bedell.  See Item No. 1101.  According to the government, when the amount of trips each defendant made to the smokeshop is multiplied by the average load, the total

tax loss caused by each defendant is in excess of $2.5 million, which under U.S.S.G. §§ 2S1.1(a)(2) and 2B1.1(b)(1)(J), the government argues, results in a base offense level of 26.[1]

Contrary to the government, the defendants contend that they should be considered "P's" rather than "Q's." Defendants argue that although they may have had a common source of supply, *i.e.*, A.D. Bedell and the smokeshop, there is no evidence that they participated in jointly undertaken criminal activity. They each operated their own businesses independently of their codefendants. There is no evidence that they received any type of benefit from or had any responsibility for any of the businesses or activities of their codefendants. Perhaps most importantly, there is no evidence that they pooled their profits or had any financial interest in each other's businesses. Thus, defendants argue, they should each be held accountable only for the amount of tax loss for which the government can prove they were each personally responsible.

Defendants further argue that the government has failed to prove any specific tax loss amounts by a preponderance of the evidence. They argue that the government relies almost exclusively on the testimony of Linda Mohawk, who is not a credible witness. For example, defendants argue, Mohawk testified at trial that the code name "AT" belonged to defendant Aref Ahmed, yet before the grand jury, she testified that the code name "AT" belonged to someone else. Defendants also point out that while Mohawk testified at trial that the defendants came to the smoke shop hundreds of times over the period of the conspiracy, they appear on relatively few of the

---

[1] It is not clear to the Court why the government is applying U.S.S.G. §§ 2S1.1(a)(2) and 2B1.1(a)(1) rather than U.S.S.G. §§ 2S1.1(a)(1), 2E4.1(a)(2) and 2T4.1.

approximately 400 in-store video surveillance tapes she provided to the government. Thus, defendants argue, because the government has failed to prove by a preponderance of the evidence any specific tax loss amounts attributable directly to each defendant, the Court must apply the minimum base offense level of 9 for each of them.  See U.S.S.G. §§ 2S1.1(a)(1) and 2E4.1(a)(1).

In the alternative, at least some of the defendants argue that the most tax loss they should each be held accountable for is the amount traceable directly to each of them through the code names used on the A.D. Bedell invoices.  This would result in a different base offense level for each defendant, each of which would be substantially lower than the base offense level of 26 proposed by the government.

The Court finds that the defendants should be considered "P's" rather than "Q's."  In United States v. Studley, 47 F.3d 569, 575 (2d Cir. 1995), the Second Circuit, in discussing the example in Application Note 2(c)(6) to § 1B1.3, stated as follows:

> This illustration demonstrates, first, that a defendant's knowledge of another participant's criminal acts is not enough to hold the defendant responsible for those acts.  It also demonstrates that a relevant factor in determining whether activity is jointly undertaken is whether the participants pool their profits and resources, or whether they work independently.  P's success was not dependant upon the other dealers in the area, whereas Q's success was directly tied to the activities of the other dealers.

Here, the evidence adduced at trial and at the hearing supports the conclusion that each defendant's agreement to participate in the cigarette smuggling scheme was limited to his own smuggling activity and did not encompass the smuggling activity of the other smugglers.  Each defendant operated independently, with the objective of making as much money as possible for himself.  There was no pooling or

sharing of profits. The success of a particular defendant was not dependent on the other smugglers. The defendants had no interest in the success of the operation as a whole, and took no steps to further the operation beyond smuggling their own loads of cigarettes.

The defendants certainly knew of the criminal acts of the other smugglers, but that by itself is not sufficient to hold them accountable for those acts. Although there was some evidence that they sometimes employed common drivers to haul their loads, there is no evidence that they shared the profits with those drivers or with anyone else, or that they shared the costs with each other.[2]

Because the defendants are "P's" rather than "Q's," they are only accountable for the tax loss amounts that they personally participated in or caused.

The Court rejects the tax loss calculations for individual defendants proffered by the government that are based on the number of trips to the smokeshop by each defendant multiplied by the average load. Linda Mohawk was, for the most part, a credible witness. However, her testimony regarding the number of smuggling trips made by the defendants appears to have been somewhat exaggerated. While she testified that the defendants made hundreds of trips to the smokeshop, they appeared on relatively few of the surveillance tapes. In addition, the Court finds these calculations questionable because they result in a tax loss significantly greater than the amount of tax loss calculated using the A.D. Bedell invoices (and that amount was attributable to all 32 defendants in this case, not just the five who went to trial).

---

[2] It appeared for the most part that the defendants drove their own loads.

The Court also rejects defendants position that the government has failed to prove any specific tax loss amounts by a preponderance of the evidence. As stated, the Court finds Linda Mohawk to be a credible witness. Specifically, the Court finds her testimony regarding the code names used on the A.D. Bedell invoices to be credible. Accordingly, in determining the amount of tax loss for which each defendant should be held accountable, the Court shall rely on the coded invoices. Forensic Auditor Jeffrey Cosgrove of the Bureau of Alcohol, Tobacco, Firearms and Explosives testified at the hearing that the excise tax losses attributable to coded invoices linked to the individual defendants were as follows:

| Defendant | N.Y. Loss | Mich. Loss |
| --- | --- | --- |
| Mohamed Abuhamra | $288,597 | $386,512 |
| Aref Ahmed | $273,890 | $366,817 |
| Rmzy Abdullah | $ 33,359 | $ 44,677 |
| Nagib Aziz | $ 10,780 | $ 14,437 |
| Azzeaz Saleh | $  6,815 | $  9,127 |

The Court will use the New York tax loss amounts because they are smaller and therefore provide a more conservative estimate of the loss amounts. Pursuant to U.S.S.G. §§ 2S1.1(a)(1), 2E4.1(a)(2) and 2T4.1, the resulting base offense level for each of the defendants is as follows:

| Defendant | Base Offense Level |
| --- | --- |

| | |
|---|---|
| Mohamed Abuhamra | 18 |
| Aref Ahmed | 18 |
| Rmzy Abdullah | 14 |
| Nagib Aziz | 10 |
| Azzeaz Saleh | 10 |

The Court shall apply these base offense levels, along with the specific offense characteristics detailed in each defendant's PSR, at the time of sentencing.[3]

**B.   *Use of a Minor by Defendant Mohamed Abuhamra***

With regard to defendant Mohamed Abuhamra, the government requests that the Court apply a two-level upward adjustment pursuant to U.S.S.G. § 3B1.4, because he used a person less than eighteen years of age to commit the offense. The Court shall apply such an adjustment. A videotape admitted into evidence at trial showed a young boy accompanying defendant Abuhamra, taking direction from him and assisting him in gathering and loading cigarettes.

---

[3] Defendants argue that the Sixth Amendment of the United States Constitution precludes the Court from increasing their sentences above the minimum base offense level based on any fact not found by the jury as part of its verdict. Here, the jury did not determine the amount of loss. Thus, defendants argue, the Court is precluded from determining the amount of loss and must apply the minimum base offense level under the U.S.S.G. Defendants further argue that even though the United States Supreme Court recently held in United States v. Booker, 125 S. Ct. 738 (2005), that the U.S.S.G. are only advisory and therefore do not violate the Sixth Amendment, application of the Booker decision here would violate the *ex post facto* clause of the Constitution. This same argument was raised and rejected by the Eleventh Circuit in United States v. Duncan, 400 F.3d 1297, 1306-07 (11th Cir. 2005). This Court adopts the reasoning and result in Duncan, and finds defendant's *ex post facto* argument without merit.

**C.** *Government's Motions for Upward Departure*

The government has moved for upward departures, pursuant to U.S.S.G. § 5K2.21, against defendants Nagib Aziz and Azzeaz Saleh based on their alleged participation in a robbery of another cigarette smuggler.[4] After considering the evidence adduced at the sentencing hearing, the Court grants the government's motion for upward departure with regard to defendant Nagib Aziz, but denies it as to Azzeaz Saleh.

The evidence adduced at the hearing showed by a preponderance of the evidence that defendant Nagib Aziz, along with others, participated in the carjacking, robbery and beating of another smuggler, Menal Mikha, on or about March 31, 1997. Defendant Aziz and the other robbery participants took from Mikha over $10,000 in cash and $28,000 in contraband cigarettes. They also took Mikha's van, physically restrained him and caused him bodily injury.

Drawing an analogy to Hobbs Act robbery, 18 U.S.C. § 1951, the Court shall depart upward seven levels: two levels for causing Mikha bodily injury, see U.S.S.G. § 2B3.1((b)(3)(A); two levels for physically restraining Mikha to facilitate commission of the offense, see 2B3.1((b)(4)(B); two levels because the offense involved carjacking, see U.S.S.G. § 2B3.1(b)(5); and one level because the amount of loss exceeded $10,000, see U.S.S.G. § 2B3.1(b)(7)(B).

Although a close question, the Court finds that the government failed to

---

[4] U.S.S.G. § 5K2.21 provides that "[t]he court may increase the sentence above the guideline range to reflect the actual seriousness of the offense based on conduct . . . that did not enter into the determination of the applicable guideline range."

prove by a preponderance of the evidence defendant Azzeaz Saleh's involvement in the robbery. While there is circumstantial evidence linking defendant Saleh to the robbery, there is a serious question regarding identification. Robert Williams, the former Town of Hamburg police detective who investigated the robbery, misidentified Saleh in court. When asked to identify the man in court that Mikha had previously identified as being one of the robbers, Detective Williams incorrectly pointed out another defendant as being the person identified by Mikha.[5] Detective Williams' misidentification throws into question Mikha's out-of-court identification, which was already suspect because he (Mikha) failed to pick out defendant Saleh from a photo array (he later identified Saleh from an individual photo of Saleh).

## CONCLUSION

For the reasons stated, the Court shall apply the following base offense levels at the time of sentencing: (1) Mohamed Abuhamra, level 18; (2) Aref Ahmed, level 18; (3) Rmzy Abdullah, level 14; (4) Nagib Aziz, level 10; and (5) Azzeaz Saleh, level 10. The Court also grants the government's request that a two-level upward adjustment by applied to defendant Mohamed Abuhamra for use of a minor to commit the offense. In addition, the Court grants the government's motion for upward departure with regard to defendant Nagib Aziz and shall depart upward seven levels. Finally, the Court denies the government's motion for an upward departure with regard to defendant Azzeaz Saleh.

---

[5] Mikha is now deceased.

11

Defendant Aref Ahmed shall be sentenced on July 26, 2005 at 12:30 p.m. Defendant Mohamed Abuhamra shall be sentenced on July 27, 2005 at 12:30 p.m. Defendant Rmzy Abdullah shall be sentenced on July 28, 2005 at 12:30 p.m. Defendant Nagib Aziz shall be sentenced on August 3, 2005 at 12:30 p.m.  Defendant Azzeaz Saleh shall be sentenced on August 4, 2005 at 12:30 p.m.

The "Statements of Parties with respect to Sentencing Factors," including any objections or motions, shall be filed by July 8, 2005.  Responses to any objections or motions shall be filed by July 15, 2005.  The Final PSR's shall be disseminated by July 19, 2005.  Any sentencing memoranda or letters in support of the defendants shall be filed by July 20, 2005.

IT IS SO ORDERED.

/s/ Richard J. Arcara

_____
HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

Dated: June 24 , 2005